**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JIE TANG,<br><br>                    Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A",<br><br>                    Defendants. | Case No. 2:25-cv-01850-CCW<br><br>**DEFENDANTS' OPPOSITION TO**<br>**ORDER TO SHOW CAUSE RE**<br>**PRELIMINARY INJUNCTION**<br><br>Honorable Judge Christy Criswell Wiegand |

<u>**Defendants' Opposition to Order to Show Cause Re Preliminary Injunction**</u>

Defendants respectfully submit this Response in Opposition to Plaintiff's Motion for Preliminary Injunction.

## I.     INTRODUCTION

The Court should not grant a Preliminary Injunction ("PI") in this case. Plaintiff has failed to meet its heavy burden of persuasion on each element required to obtain the extraordinary remedy of preliminary injunctive relief.

Plaintiff has not made a clear showing that it is likely to succeed on the merits of its claims or that it will suffer irreparable harm absent injunctive relief—both of which are independent gateway requirements under controlling Third Circuit precedent. Plaintiff's allegations rest on disputed factual assertions concerning authorship, originality, and alleged infringement—issues that require discovery and adjudication on a full evidentiary record, not resolution through emergency proceedings.

Plaintiff's prolonged delay in seeking relief further undermines any claim of urgency or irreparable harm. Defendants' products were openly marketed and sold for more than a year before Plaintiff sought ex parte relief. Despite this delay, Plaintiff now seeks to maintain extraordinary injunctive measures based on speculative and compensable economic harm.

Because Plaintiff has failed to satisfy the threshold requirements for preliminary injunctive relief, its Motion for Preliminary Injunction should be denied.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff initiated this action on December 3, 2025, and simultaneously sought ex parte emergency relief in the form of a temporary restraining order and an order to show cause why a preliminary injunction should not issue. Based solely on Plaintiff's unilateral submissions and without notice to Defendants, the Court granted limited temporary relief and issued an order to show cause.

Plaintiff sought emergency relief after Defendants had already independently created, marketed, and sold the accused products. Defendants began selling the products at issue as early as August 2023, openly advertising them through online platforms using commonly available design elements and visual concepts widely used throughout the marketplace. Plaintiff did not seek a temporary restraining order or preliminary injunction during this extended period of public sales.

Following entry of the TRO, Plaintiff moved to continue the show cause hearing and extend the temporary restraining order. On December 18, 2025, the Court granted Plaintiff's request, rescheduled the preliminary injunction hearing for January 6, 2026, and extended

Defendants' Opposition to Order to Show Cause Re Preliminary Injunction

the TRO pending that hearing. Defendants have now appeared and oppose Plaintiff's request for a preliminary injunction.

Plaintiff alleges that it holds exclusive rights in the asserted designs and that Defendants' products are substantially similar. Defendants dispute these allegations. The asserted designs incorporate common and well-known features, and numerous similar designs existed prior to Plaintiff's claimed work. The scope of any protectable expression is disputed. Whether Defendants' products are substantially similar to Plaintiff's alleged work is a fact-intensive inquiry that requires discovery, expert analysis, and a complete evidentiary record, and cannot be resolved on the limited record presented at the preliminary injunction stage.

The TRO has already imposed immediate and severe consequences on Defendants. As a result of the asset restraints, Defendants' payment accounts have been restricted, significantly impairing their ability to conduct ordinary business operations, fulfill orders, pay vendors, and maintain ongoing operations. By contrast, Plaintiff alleges only speculative economic harm that, if proven, can be remedied through monetary damages following adjudication on the merits.

## III.    Legal Standards Regarding Preliminary Injunction Orders

A preliminary injunction is "an extraordinary remedy," and "should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). A movant seeking a preliminary injunction must establish: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Defendants' Opposition to Order to Show Cause Re Preliminary Injunction

As the Supreme Court has emphasized, a preliminary injunction is "a drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (cleaned up). The burden rests squarely on the plaintiff to establish each element required for preliminary injunctive relief. *P.C. Yonkers, Inc. v. Celebrations the Party Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). A plaintiff's "failure to establish any element . . . renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

The first two elements—likelihood of success on the merits and irreparable harm— are the "most critical" factors. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). With respect to the first element, the Third Circuit has explained that likelihood of success on the merits "requires a showing significantly better than negligible, but not necessarily more likely than not." *Id.* As to the second element, irreparable harm requires a showing that such harm is "more likely than not" in the absence of preliminary relief. *Id.*

Only if the movant satisfies these two gateway requirements does the Court proceed to consider the remaining factors and determine, in its sound discretion, whether all four factors, taken together, warrant the extraordinary relief of a preliminary injunction. *Id.* Where the movant fails to carry its burden on either gateway factor, a preliminary injunction must be denied.

## IV.    LEGAL ARGUMENT

### A.  Plaintiff Is Unlikely to Succeed on the Merits

To satisfy the first and most critical gateway requirement for preliminary injunctive relief, Plaintiff must demonstrate a likelihood of success on the merits that is "significantly

better than negligible." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). This standard is demanding and requires more than speculative assertions or unresolved allegations. Where the merits turn on disputed facts and an undeveloped record, a preliminary injunction is inappropriate. *Id.*

Plaintiff cannot meet this burden here.

**1. Plaintiff's Claims Present Substantial and Unresolved Factual Disputes**

At the core of Plaintiff's request for injunctive relief are factual disputes that go directly to the merits of the case and cannot be resolved at this early stage. These disputes include, among other things, whether Plaintiff possesses enforceable rights in the asserted designs, the scope of any protectable expression, and whether Defendants' products are substantially similar under the governing legal standard.

Defendants dispute Plaintiff's claims of ownership, originality, and infringement. The designs at issue incorporate common and widely used elements that exist throughout the marketplace, and Defendants have identified numerous prior designs that predate Plaintiff's alleged work. These facts raise serious questions concerning both originality and the proper scope of protection—questions that require discovery, expert analysis, and a fully developed evidentiary record.

Because resolution of these issues depends on factual development and credibility determinations, Plaintiff cannot make the "clear showing" of likely success required to justify preliminary injunctive relief. *Reilly*, 858 F.3d at 179.

**2. Plaintiff's Infringement Theory Is Insufficient at the Preliminary Stage**

Plaintiff's infringement allegations rest largely on generalized visual comparisons and conclusory assertions of similarity. Such allegations may suffice to initiate litigation, but they do not establish a likelihood of success on the merits at the preliminary injunction stage.

Determining whether the accused products are substantially similar to Plaintiff's asserted designs is a fact-intensive inquiry that requires careful analysis of the overall visual impression, design logic, and aesthetic focus of the respective works. These determinations are particularly ill-suited for resolution on an emergency record, especially where Defendants vigorously dispute Plaintiff's characterizations and present competing interpretations of the designs.

Courts routinely deny preliminary injunctions where, as here, the record reflects "sharp factual disputes that must be resolved before the merits can be determined." Id. Granting injunctive relief under such circumstances would improperly require the Court to resolve contested merits issues without the benefit of discovery.

### 3. Plaintiff's Delay Further Undermines Any Showing of Likely Success

Plaintiff's prolonged delay in seeking injunctive relief further undermines its claim that it is likely to succeed on the merits. Plaintiff alleges that Defendants' challenged conduct began well before this action was filed, yet waited more than a year before seeking emergency relief.

While delay alone may not be dispositive, it strongly undercuts Plaintiff's assertion that its rights are clear and that its claims are sufficiently strong to warrant extraordinary relief. A party that truly believed its rights were being violated in a manner warranting emergency intervention would not have waited such an extended period before seeking judicial relief.

Defendants' Opposition to Order to Show Cause Re Preliminary Injunction

**4. Plaintiff Fails to Satisfy the First "Gateway" Requirement Under Reilly**

Taken together, Plaintiff's reliance on disputed factual assertions, its failure to present a developed evidentiary record, and its substantial delay preclude the showing required under Reilly. At most, Plaintiff has identified issues that warrant adjudication through the ordinary litigation process — not through the extraordinary remedy of a preliminary injunction.

Because Plaintiff has failed to establish a likelihood of success on the merits, the Court need not proceed further in the preliminary injunction analysis. *Reilly*, 858 F.3d at 179

**B. Plaintiff Failed to Demonstrate Irreparable Harm**

To satisfy the second gateway requirement for preliminary injunctive relief, Plaintiff must demonstrate that it is more likely than not to suffer irreparable harm in the absence of an injunction. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Irreparable harm is harm that cannot be adequately remedied by monetary damages and must be actual and imminent, not speculative or remote. *Id.*

On this record, Plaintiff has not carried its burden.

**1. Plaintiff's Alleged Harms Are Economic and Compensable**

Plaintiff's asserted injuries consist primarily of alleged loss of sales, market share, and goodwill arising from purported infringement. These are quintessentially economic harms that, if proven, may be remedied through monetary damages following adjudication on the merits.

The Third Circuit has repeatedly held that the availability of monetary relief weighs strongly against a finding of irreparable harm. "The availability of adequate monetary damages belies a claim of irreparable injury." *TD Bank N.A. v. Hill*, 928 F.3d 259, 282 (3d

Defendants' Opposition to Order to Show Cause Re Preliminary Injunction

Cir. 2019) (cleaned up). This principle applies with equal force in intellectual property cases, where both actual and statutory damages are available remedies.

Here, Plaintiff has not identified any concrete injury that cannot be remedied through damages. Nor has Plaintiff explained why monetary relief—expressly authorized under the Copyright Act—would be inadequate to address the alleged harms it identifies.

## 2. Plaintiff's Delay Is Fundamentally Inconsistent with Any Claim of Irreparable Harm

Plaintiff's prolonged delay in seeking injunctive relief fatally undermines any assertion that it faces imminent and irreparable harm. Plaintiff alleges that Defendants' challenged conduct began as early as August 2023, yet Plaintiff did not seek emergency relief until December 2025—more than a year later.

Such a delay is fundamentally inconsistent with a claim that immediate injunctive relief is necessary to prevent irreparable injury. Courts routinely find that where a plaintiff has tolerated the complained-of conduct for an extended period, any alleged harm cannot be deemed irreparable or imminent. A party that truly believed it was facing ongoing irreparable injury would not have waited over a year before seeking judicial intervention.

## 3. Plaintiff Has Not Shown Any Likelihood of Continuing Irreparable Injury

Even assuming arguendo that Plaintiff could establish past harm, that alone is insufficient. To obtain preliminary injunctive relief, Plaintiff must demonstrate a likelihood of future irreparable harm absent an injunction.

The Third Circuit has made clear that "the continuing nature of the infringement does not mean that any future injury would be irreparable." *TD Bank N.A.*, 928 F.3d at 280.

Defendants' Opposition to Order to Show Cause Re Preliminary Injunction

Plaintiff has not presented evidence demonstrating that Defendants' conduct will cause imminent harm that cannot be addressed through damages or subsequent relief.

Plaintiff's reliance on generalized assertions of loss of control or market confusion does not satisfy the heightened "clear showing" required at this stage. Conclusory statements and speculative fears — particularly those recycled from ex parte TRO submissions — are insufficient to establish irreparable harm under Third Circuit precedent.

### 4. Plaintiff Fails to Satisfy the Second "Gateway" Requirement Under Reilly

Taken together, Plaintiff's delay, its reliance on compensable economic harms, and its failure to identify any imminent, non-speculative injury defeat its claim of irreparable harm. Plaintiff therefore fails to satisfy the second gateway requirement for preliminary injunctive relief.

Because Plaintiff has failed to establish irreparable harm — an independent gateway factor — the Court must deny Plaintiff's request for a preliminary injunction without proceeding further. *Reilly*, 858 F.3d at 179.

### C. The Balance of Equities Strongly Favors Defendants, and a Blanket Asset Freeze Is Unwarranted

In weighing the balance of hardships, the Court must compare the harm Plaintiff claims it will suffer absent an injunction against the harm Defendants will suffer if injunctive relief is imposed. Where the relief sought would impose severe, immediate, and potentially business-ending consequences on a defendant — while the plaintiff alleges only speculative or compensable harm — the balance of equities weighs decisively against a preliminary injunction. That is precisely the case here.

Defendants' Opposition to Order to Show Cause Re Preliminary Injunction

**1. The TRO and Requested Injunctive Relief Impose Severe and Immediate Harm on Defendants**

The temporary restraining order already in place has imposed substantial and immediate burdens on Defendants' business operations, including restrictions on payment accounts and access to operating funds. These restraints impair Defendants' ability to fulfill orders, pay vendors, and maintain ordinary business activities.

Such harms are not theoretical or remote. Asset restraints and operational shutdowns threaten the continued viability of a business and inflict immediate damage that cannot easily be undone, particularly where the defendant has not yet had the opportunity to litigate the merits on a full evidentiary record.

**2. Plaintiff Faces, at Most, Speculative and Compensable Harm**

By contrast, Plaintiff alleges harms that are economic in nature and fully compensable through monetary relief if Plaintiff ultimately prevails. As discussed above, Plaintiff's claims center on alleged loss of sales, market share, and goodwill—injuries that do not justify imposing extraordinary and business-disrupting relief at the preliminary stage.

The imbalance is stark. Plaintiff seeks to preserve its competitive position through emergency injunctive relief, while Defendants face immediate and potentially irreversible harm to their ongoing business operations based on disputed allegations and an undeveloped record.

**3. The Equities Do Not Favor Business-Ending Relief at the Preliminary Stage**

Courts are particularly reluctant to impose relief that effectively removes a defendant from the marketplace before liability has been established. This concern is heightened where,

Defendants' Opposition to Order to Show Cause Re Preliminary Injunction

as here, Plaintiff delayed seeking relief for an extended period and where the alleged harms persisted without emergency intervention.

Granting a preliminary injunction under these circumstances would alter the status quo rather than preserve it. Equity does not favor using extraordinary remedies to reshape competitive conditions before the merits have been adjudicated.

### 4. The Balance of Hardships Confirms Denial of Injunctive Relief

When the severe and immediate harm imposed on Defendants is weighed against Plaintiff's speculative and compensable claims, the balance of hardships weighs sharply against continuation of injunctive relief. This factor independently confirms that a preliminary injunction is unwarranted.

### D. A Preliminary Injunction Would Disserve the Public Interest

The public interest weighs against issuance of a preliminary injunction in this case. Courts have a strong interest in ensuring that extraordinary equitable remedies—particularly those that restrict business operations and freeze assets—are not imposed based on disputed allegations and an undeveloped factual record.

Granting a preliminary injunction here would effectively remove Defendants from the marketplace before any determination of liability. Such relief risks transforming preliminary injunction proceedings into a substitute for merits adjudication, undermining fundamental principles of due process and fairness. The public interest is not served by allowing contested intellectual property claims to be resolved through emergency relief rather than through the orderly litigation process.

Moreover, the public has an interest in fair competition and in avoiding the misuse of injunctive remedies to gain strategic leverage in commercial disputes. Where, as here, the

Defendants' Opposition to Order to Show Cause Re Preliminary Injunction

merits of Plaintiff's claims are sharply contested and Plaintiff delayed seeking relief, the public interest favors allowing the case to proceed on a full evidentiary record rather than imposing irreversible consequences at the preliminary stage.

Accordingly, the public interest weighs against continuation of injunctive relief.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff has failed to carry its burden of making the clear showing required for the extraordinary remedy of a preliminary injunction. Plaintiff has not demonstrated a likelihood of success on the merits or irreparable harm—both of which are independent gateway requirements under controlling Third Circuit precedent.

Where, as here, the merits are sharply disputed, the evidentiary record is undeveloped, and Plaintiff delayed seeking emergency relief, preliminary injunctive relief is unwarranted. By contrast, continuation of the TRO and issuance of a preliminary injunction would impose severe and immediate harm on Defendants and disrupt ordinary business operations based on contested allegations.

Accordingly, Defendants respectfully request that the Court deny Plaintiff's request for a preliminary injunction and dissolve the temporary restraining order.

Dated: January 2, 2026

*Marjorie Ouyang*

_____

Marjorie Ouyang

Attorney for Defendant

Defendants' Opposition to Order to Show Cause Re Preliminary Injunction

**PROOF OF SERVICE**
*TANG v. SCHEDULE A DEFENDANTS*
CASE NO: 2:25-cv-01850-CCW

I, the undersigned, state that I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is One Park Plaza, Suite 600, Irvine, CA 92614.

On January 2, 2026, I served the foregoing document described as the **DEFENDANTS' OPPOSITION TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** on the following person(s) in the manner indicated in the Attachment to Proof of Service:

Zheng Liu
Aptum Law
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
650-475-6289

[x] (BY UNITED STATES MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at addresses set forth herein, by depositing the sealed envelope with the United States Postal Service, with the postage fully prepaid, or by placing the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

[ ] (BY ELECTRONIC TRANSMISSION) I served electronically from the electronic notification address of thomas.huang@valleysummitlaw.com the documents described above and a copy of this declaration to the person and at the electronic notification address set forth herein. The electronic transmission was reported as complete and without error.

[ ] (BY FAX TRANSMISSION) On this date, at the time indicated on the transmittal sheet, attached hereto, I transmitted from a fax transmission machine the document described above and a copy of this declaration to the person, and at the fax transmission telephone numbers, set forth herein. The above-described transmission was reported as complete and without error by a properly issued transmission report issued by the fax transmission machine.

[ ] (VIA MESSENGER / PERSONAL DELIVERY) I served the documents by placing them in an envelope of package addressed to the persons at the addresses set forth herein,
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on January 2, 2026, at Los Angles, California.

_____/s/Thomas Huang_____
Thomas Huang

**DEFENDANT'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION**