IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JIE TANG,<br><br>                Plaintiff,<br>    v.<br><br>SCHEDULE A DEFENDANTS**,**<br><br><br>                Defendants. | Civil Case No.: 2:25-cv-01850-CCW |

**<u>DECLARATION OF CHINA LITIGATON EXPERT MR. ZHI HAN</u>**

I, Zhi Han, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

    **A.  I have extensive experience in US-China IP litigations.**

2. I am an intellectual property litigation partner at the Guangdong Zhongkuan Law firm specializing in U.S.-China IP litigation. I earned my law degree in 2015 from the Shantong University in Guangdong Provine, China and have practice IP litigation in China for more than 10 years. I have assisted dozens of patent,

1

trademark, and copyright litigations in the United States. A true and correct copy of my resume is attached to this declaration as Exhibit A.

3. More specifically, I have worked with U.S. lawyers to litigate cases in the Western District of Pennsylvania and the Northern District of Illinois. For example, in 2025, I have assisted at least three IP infringement cases before the U.S. District Court for the Western District of Pennsylvania (25-cv-01850, 25-cv-02009, and 25-cv-01951), in addition to dozens of cases before the U.S. District Court for the Northern District of Illinois.

4. I have extensive experience negotiating settlement with China IP infringers, verifying the authenticity of documents produced by China infringers, and analyzing their claims of prior art, prior sales, and independent creation.

5. I have negotiated hundreds of settlements with IP fingers in China. During these negotiations, China IP infringers routinely provided me with (1) webpage "screenshots" showing purported prior sales of related products and (2) statements about "low sales"—to try to invalid Plaintiff's IP and exact a low settlement.

6. Most of these "screenshots" turned out to be doctored submissions. For example, it is commonplace to buy photoshopped webpage screenshots from such websites as Taobao.com and TMall.com for $10 to $80 dollars apiece. For the

2

Court's references, true and correct copies of various advertisements on Tmall.com (and their English machine-translation) for generating such photoshopped webpages and screenshots "within only two minutes" and "to the full satisfactions of customers" are provided in Exhibits B and C attached to this declaration.

7. For another example, to verify the authenticity of a purported screenshot, I often asked the IP infringers to provide the links to the original webpages, they almost always could not, claiming that the links had been removed.

8. But if the links had been removed, I asked these IP infringers (i) how they were able to generate the screenshots, and (i) when they generated the screenshots. The IP infringers almost never answered.

**B. The proffered "screenshot" by Defendant is untrustworthy.**

9. After the January 6, 2026 hearing, Mr. Andy Liu, the Counsel for Plaintiff Jie Tang asked me to investigate the claims of prior sales by Defendant Longyan Blue Whale. After a thorough investigation, I find Defendant's claim to be untrustworthy for the following reasons.

10. First, I could not locate the original webpage which Defendant's "screenshot" purportedly shows. I searched the Tiktok.com (where Defendant said the corresponding webpage was hosted) but could not locate the corresponding

Tiktok webpage.

11. Second, I understand that so far Defendant has also not provided Mr. Andy Liu nor the Court with a copy of the screenshot and more importantly, *the link to the original webpage*. Nor has Defendant provided any information about *who* took the screenshot and *when* the screenshot was taken.

12. The lack of critical information like this indicates that proffered "screenshot" by Defendant is untrustworthy and probably forged.

**C. The purported company representative likely has no actual knowledge of the defendant company.**

13. As background, IP infringers in China often hire IP consulting firms located in China (rather than U.S. law firms) to negotiate settlement of U.S. IP lawsuits. Because IP consulting firms are much cheaper, charging a $1,000 to $5,000 flat rate to handle all proceedings relating to preliminary injunctions.

14. The IP consulting firms sometimes try to settle lawsuits before a preliminary injunction hearing. But if no settlement is reached before a preliminary hearing, the IP consulting firms often pay a U.S. lawyer from $2,500 to $3,000 to appear at the preliminary injunction hearing.

15. Most importantly, an assistant from an IP consulting firm sometimes appears at the preliminary injunction hearing on behalf of a defendant company. The IP assistant often asserts that the defendant company has made low sales (or no

sales) of the accused products. The IP assistant sometimes makes these assertions without reviewing any sales records from the defendant company at all.

16. IP consulting firms makes these baseless assertions because they are out of the jurisdiction of U.S. courts and because they have guaranteed to IP infringers that preliminary injunctions would not be issued.

17. These IP assistants and preliminary injunction lawyers, however, often have little knowledge of the defendant they represent. For example, a preliminary injunction lawyer engaged by such IP consulting firms sometimes does not even know the true name of the defendant company that they claim to represent, nor has the preliminary injunction lawyer talked to anyone at the defendant company.

18. Those IP assistants who assert a defendant company has made low sales (or no sales) of the accused products sometimes also do not know the full details of the defendant company (other than their online aliases), for example, where the defendant company is located, the name of the defendant company's corporate officers.

19. Here, I believe the testimony by the "company representative" at the preliminary hearing to be untrustworthy.

20. The "company representative" offered no details about the sales of the accused

products other some random, barebone numbers.

21. The "company representative "provided her last name only, not her full legal name or any work address or work phone number.

22. When asked of which company she was an employee, the "company representative" did not answer, claiming that she does not understand English. Then, the "company representative" refused to answer any other questions from Plaintiff Tang, once again claiming that she does not understand English.

23. This is contrasted with the "company representative" unequivocal answers to the defendant's own questions about prior sales.

24. I believe the "company representative" was in fact an IP assistant at an IP consulting firm hired by the Defendant, rather than a true representative of the Company.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Date: January 7, 2026                                   Respectfully submitted,


                                                        _____/s/ *Zhi Han*_____
                                                        Zhi Han

# EXHIBIT A

# EXHIBIT B

# EXHIBIT C