1

2

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

3

JIE TANG,

Case No. 2:25-cv-01850-CCW

Plaintiff,

4

v.

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISSOLVE PRELIMINARY INJUNCTION**

5

LONGYAN BLUE WHALE
INFORMATION TECHNOLOGY CO.,

6

Honorable Judge Christy Criswell Wiegand

LTD., d/b/a EMILYMA LIMITED,
TAPATHER, GIFTY HUBS,

7

Complaint Filed: December 1, 2025

NEXTSUSS LIMITED, and
TAPATHER.COM,

8

9

Defendant.

10

## I.    INTRODUCTION

11

12

Defendant respectfully moves to dissolve the Preliminary Injunction entered on

13

January 9, 2026 (ECF No. 47), pursuant to Federal Rule of Civil Procedure 60(b)(5), on the

14

ground that continued enforcement of the injunction is no longer equitable in light of a

materially expanded factual record now before the Court.

15

16

The Preliminary Injunction was entered following expedited proceedings and on a

17

limited evidentiary record. At the time the Court ruled, it did not have the benefit of

18

Defendant's supplemental factual submissions detailing the origin, publication, and sales

history of the products at issue, nor the operational realities underlying the asset restraint

19

20

imposed through Defendant's PayPal account. Those facts are now squarely before the

21

Court through the Supplemental Declaration of Zhiyun Jiang and the accompanying

documentary exhibits filed at Dkt. 49-1.

22

23

As set forth in that Declaration, Defendant completed the creation of the designs

24

used on the Florida State Stadium Crewneck Sweatshirt and the Penn State Stadium

25

Crewneck Sweatshirt in **June-August 2023**, publicly listed and sold those products on its websites in **August 2023 — 4 months** before Plaintiff **even applied for copyright registration**. Plaintiff's copyright registration did not become effective until December 4, 2023, and the registration decision was not issued until March 19, 2024 — both well after Defendant first created designs used on the Florida State Stadium Crewneck Sweatshirt and the Penn State Stadium Crewneck Sweatshirt.

Further, Defendant's backend publication records and order records generated contemporaneously confirmed, with precise timestamps, the dates Defendant started selling Florida State Stadium Crewneck Sweatshirt and the Penn State Stadium Crewneck Sweatshirt. These undisputed facts fundamentally undermine the **premise that Defendant copied Plaintiff's works or had "access" to any copyrighted material owned by Plaintiff**, and they bear directly on Plaintiff's likelihood of success on the merits.

In addition, the supplemental records show that the asset restraint on Defendant's PayPal account is unnecessary. As reflected in the PayPal account records attached as Exhibit I, USD **71,357.06** of the account balance is designated as subject to PayPal's reserve requirements and would not be available for withdrawal even under normal account conditions. The current Court-ordered restraints, together with PayPal's internal reserves, result in economic damage to Defendant far more severe than the preservation of funds contemplated by a preliminary injunction. As described in Ms. Jiang's Declaration (Dkt. 49-1), the combined effect of PayPal's internal reserves and the Court-ordered restraint has rendered Defendant unable to withdraw funds, issue customer refunds, or conduct ordinary commercial transactions, or cover ordinary operation costs, forcing Defendant to halt

business operations. Defendant does not believe these consequences were intended by the Court, nor necessary to serve the equitable purposes of interim injunctive relief.

Equity does not permit a preliminary injunction to persist when its foundational assumptions are contradicted by facts and when its **continued application imposes disproportionate and unintended hardship. Under Rule 60(b)(5)**, and the Third Circuit's guidance that injunctions must remain responsive to the specific circumstances of a case, Defendant respectfully submits that the Preliminary Injunction should now be dissolved.

## II.    FACTUAL BACKGROUND

### A.  Defendant's Prior Creation, Publication, and Sales in August 2023.

The records now before the Court establish that Defendant independently created, publicly offered, and sold the Florida State Stadium Crewneck Sweatshirt (hereinafter, "Florida Sweatshirt") and the Penn State Stadium Crewneck Sweatshirt (hereinafter, "Penn Sweatshirt") (hereinafter, collectively "Products") **months before (1) Plaintiff's application for copyright registration and (2) Plaintiff's offering for sale of the products bearing the same designs.**

As explained in the Supplemental Declaration of Zhiyun Jiang (Dkt. 49-1), Defendant completed the designs (hereinafter, separately, the "Florida Design" and the "Penn Design") on both Products and began offering and selling the Products on Defendant's independent Tapather storefront in August 2023. (Jiang Decl. ¶ 3.) Ms. Jiang personally participated in the design and launch of the Products. Ms. Jiang is familiar with Defendant's storefront operations and sales records. (*Id.* ¶ 1.)

Defendant's backend publication records, generated contemporaneously through the Shoplazza e-commerce platform, reflect that the Penn Sweatshirt was listed for sale on the

Tapather storefront on August 24, 2023, and that the Florida Sweatshirt was listed for sale on August 25, 2023. (*Id.* ¶ 5 & Ex. A.) These records confirm that both Products were publicly available for purchase as of those dates. The design on the Penn Sweatshirt (hereinafter, the "Penn Design") was designed around June of 2023, and the design on the Florida Sweatshirt (hereinafter, the "Florida Design") was designed around July of 2023.

Backend order records further demonstrate that Defendant did not merely list the products, but completed actual customer sales beginning in August 2023. The earliest recorded customer order for the Penn State Stadium Crewneck Sweatshirt was placed on August 26, 2023, and the earliest recorded customer order for the Florida Sweatshirt **was placed on August 28, 2023**. (*Id.* ¶ 6 & Ex. B.) These order records confirm that the Products entered the marketplace and were commercially exploited well before any alleged copyright application by Plaintiff.

Notably, sales volume remained low from 2023 through 2025. During this period, the Tapather storefront recorded **26 orders** for the Penn Sweatshirt and **31 orders** for the Florida State Sweatshirt, with the majority of transactions occurring in 2023. (*Id.* ¶¶ 7 – 8 & Exs. C – D.)

These undisputed records establish a definitive timeline: Defendant independently created the designs, publicly offered the products, and completed the first few transactions in August 2023—**predating** Plaintiff's copyright application, registration, or market entry. **This chronology negates any claim of access or copying and confirms Plaintiff's inability to demonstrate a likelihood of success on the merits.**

### B.  Subsequent Marketplace Copying by Third Parties

Following the public debut of Defendant's products in August 2023, the marketplace for similar designs became increasingly saturated. As noted in her Supplemental Declaration (Dkt. 49-1), Ms. Jiang observed other online sellers offering products virtually identical to Defendant's designs beginning in September and October 2023. (Jiang Decl. ¶ 4.) These competing offerings continued to proliferate well after Defendant's products were already publicly available.

Based on this timing, Defendant maintains that its designs were likely copied and distributed by these third parties. Regardless of whether Defendant pursues claims against these sellers, the widespread availability of similar designs undermines any assertion that Plaintiff's designs are unique, exclusive, or solely associated with Plaintiff, which in furtherance negates Plaintiff's copyright infringement allegations.

The broader marketplace context directly undermines the equity consideration underlying the present Preliminary Injunction. Where similar products were already massively available from multiple sources, the extraordinary remedy of a sweeping asset restraint is not necessary to preserve the *status quo* or prevent irreparable harm, especially considering that Defendant had independently created and sold the products at issue months earlier.

**C. PayPal Account's Already-Existing Built-In Reserve**

Defendant utilizes PayPal as its third-party payment service provider for all online storefront transactions. As explained in the Supplemental Declaration of Zhiyun Jiang (Dkt. 49-1), PayPal internal compliance and risk-management policies require that all PayPal business accounts include built-in reserve pool independent of any judicial mandate.

Pursuant to Temporary Restraining Order (TRO) and the subsequent Preliminary Injunction (PI) in this matter, Defendant's PayPal account was frozen. As a result of the Court-ordered restraints, funds in Defendant's PayPal account became unavailable for withdrawal. In addition, PayPal's reserve pool already designated **USD 71,357.06** of the account balance as subject to PayPal's reserve requirements, which would not be available for withdrawal even under normal account conditions. Accordingly, Defendant is currently unable to withdraw or otherwise access funds in its PayPal account. (*Id*. ¶¶ 15−18.) This has heavily and devastatingly affected Defendant's operations.

Of note, among the $71,357.06 reserve, approximately $50,000 constitutes the minimum reserve imposed by PayPal on an ongoing basis. (*Id.*) The remaining portion consists of rolling reserves that are held and released on a delayed, rolling basis pursuant to PayPal's internal policies. (*Id.*) And in the present situation, those rolling reserves were reallocated to increase the reserve.

In a word, due to the account being frozen, Defendant's business operations have effectively been halted. Defendant is unable to complete normal customer transactions or resolve after-sale matters through PayPal. (*Id.* ¶¶ 20 − 21.) In addition, because refunds cannot be issued directly during the restricted period, certain customer orders have been subject to automatic full refunds processed by PayPal upon expiration, resulting in significant additional financial losses to Defendant. (*Id.* ¶ 21.)

## III.    LEGAL STANDARD

A district court has continuing authority to modify or dissolve a preliminary injunction where equitable considerations so require. That authority is rooted in Federal

1   Rule of Civil Procedure 60(b)(5), which permits relief from an order when "applying it

2   prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

3          The Third Circuit has recognized that preliminary injunctions are not immutable and

4   may be modified or vacated when subsequent developments demonstrate that continued

5   enforcement is no longer justified. In determining whether to modify or dissolve an

6   injunction entered by consent or otherwise, courts must evaluate a number of potentially

7   competing considerations. *Building & Construction Trades Council of Philadelphia &*

8   *Vicinity v. National Labor Relations Board*, 64 F.3d 880, 888 (3d Cir. 1995).

9          Those considerations include, among others: the circumstances leading to the entry

10  of the injunction; the nature of the conduct sought to be restrained; the length of time since

11  the injunction was entered; whether the party subject to the injunction has complied or

12  attempted to comply in good faith; and the likelihood that the conduct or conditions sought

13  to be prevented will recur absent the injunction. *Id.* Central to the court's analysis is whether

14  changed circumstances — particularly those not anticipated at the time the injunction was

15  entered—have rendered continued enforcement inequitable, unworkable, or unnecessary. *Id.*

16         The Third Circuit has further emphasized that courts must remain attentive to

17  whether the ongoing operation of an injunction continues to serve its intended purpose or

18  instead produces consequences that extend beyond preserving the status quo. Where

19  changed factual circumstances undermine the factual predicates on which the injunction was

20  based, or where the injunction imposes burdens that are no longer proportional to its

21  objectives, modification or dissolution is appropriate. See *Democratic Nat'l Committee v.*

22  *Republican Nat'l Committee*, 673 F.3d 192, 201 – 02 (3d Cir. 2012) (recognizing that courts

23

24

25  **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISSOLVE PRELIMINARY INJUNCTION**

must assess whether continued injunctive relief remains equitable in light of evolving circumstances).

Accordingly, where subsequent factual developments demonstrate that the objectives of a preliminary injunction have been achieved, that the risk of the alleged harm has dissipated, or that continued enforcement produces inequitable or unintended consequences, a court may — and should — exercise its discretion to dissolve or modify the injunction pursuant to Rule 60(b)(5).

## IV.    ARGUMENT

### A. The Preliminary Injunction Should Be Dissolved Because Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits.

A preliminary injunction may not be maintained where the movant cannot demonstrate a likelihood of success on the merits. That requirement is not static and must be reassessed where subsequent factual submissions undermine the foundational assumptions supporting injunctive relief. Here, the evidentiary records now before the Court — particularly the facts in the Supplemental Declaration of Zhiyun Jiang (Dkt. 49-1) — demonstrate that Plaintiff cannot establish a likelihood of success on his infringement claims.

Under Third Circuit law, "[c]opyright infringement is established if the plaintiff proves that it owned the copyrighted material and that the copyrighted material was copied by the defendant." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991). While a copyright registration gives rise to a rebuttable presumption as to the validity of the underlying copyright, that presumption is not conclusive and may be overcome by contrary evidence. The expanded factual record now before the Court provides precisely such rebuttal evidence, particularly with respect to the element of copying.

As set forth in the Jiang Declaration (Dkt. 49-1), Defendant created the Florida Design and the Penn Design in June/July of 2023, and then launched the sale of the Florida Sweatshirt and the Penn Sweatshirt in August 2023. (Jiang Decl. ¶ 3.) The sale was online at Defendant's Tapather storefront through the Shoplazza backend system, and made available for public purchase at that time. (*Id.*) Specifically, Shoplazza backend recorded the first order of the Penn Sweatshirt on August 26, 2023, and the first order of the Florida Sweatshirt on August 28, 2023. (*Id.* ¶ 6.) These dates are corroborated by backend publication timestamps showing that the products were listed online on August 24 and August 25, 2023, respectively. (*Id.* ¶ 5.)

These undisputed timestamps are critical. They establish that Defendant had already created, published, and sold the designs at issue months before Plaintiff even applied for copyright registration, **and years before Plaintiff's copyright application was approved and the alleged copyrighted products were being sold**. (Jiang Decl. ¶ 3.) On this record, Plaintiff cannot demonstrate priority of creation or first publication—facts that lie at the core of Plaintiff's infringement theory. Accordingly, Plaintiff cannot establish that Defendant copied Plaintiff's works, an essential element of Plaintiff's copyright infringement claims.

Moreover, the Jiang Declaration (Dkt. 49-1) explains that beginning in approximately September through October 2023, multiple third-party sellers began offering products online that were visually identical or near-identical to Defendant's designs. (Jiang Decl. ¶ 4.) Such marketplace activities further undermine Plaintiff's assertion of exclusive rights and support Defendant's position that the designs at issue were widely copied by others after Defendant's products had already entered the market. While Defendant did not register a copyright for these designs, the records reflect that Defendant — not Plaintiff —

**were the earliest to create, publish, and commercially exploit the Florida Design and the Penn Design**. (*Id.*)

Taken together, these facts substantially erode Plaintiff's likelihood of success on the merits. Plaintiff cannot establish that Defendant copied Plaintiff's works where the evidentiary records undisputedly demonstrate the opposite chronology — namely, that Defendant's products were created, published, and sold before Plaintiff's asserted acts of authorship and commercialization.

**Because likelihood of success on the merits is a prerequisite to continued injunctive relief, and because the current record affirmatively undermines Plaintiff's ability to satisfy that requirement, the preliminary injunction should be dissolved.**

### B. The Asset Restraint Was Never Equitable, and If Continues, Will Impose Severe and Unintended Harm in Light of Defendant's Evidence.

The asset restraint was never equitable considering Plaintiff's chance of prevailing on the merits. Even if we do not consider Plaintiff's chances of prevailing on the merits, Defendant's limited sales volumes never justified the scope of the asset restraint imposed, which has paralyzed Defendant's operation.

Now, in light of the factual record now before the Court, the asset freezing continues to undermine the equitable purpose of the Preliminary Injunction. As explained in the Jiang Declaration (Dkt. 49-1), Defendant uses PayPal as a third-party payment service provider for customer transactions. (Jiang Decl. ¶ 14.) Following the issuance of the temporary restraining order and subsequent preliminary injunction, the PayPal account associated with Defendant became subject to comprehensive account restrictions. (*Id.* ¶ 15.) In addition, PayPal's reserve pool already designated USD 71,357.06 of the account balance as subject to PayPal's reserve requirements, which would not be available for withdrawal even under

normal account conditions. (*Id.* ¶ 15.) The reserve set up by PayPal is already designed to ensure coverage for potential chargebacks, customer disputes, or payment reversals before any judicial intervention.

The operational consequences of this restraint are severe. As set forth in the Jiang Declaration (Dkt. 49-1), Defendant is currently unable to withdraw funds or process customer refunds through PayPal. (*Id.* ¶ 20.) To avoid the risk of additional funds becoming frozen, Defendant has suspended PayPal payment acceptance altogether. (*Id.*) **As a result, Defendant's business operations have effectively been halted**. (*Id.* ¶ 21.) **Defendant is unable to complete normal customer transactions or resolve after-sale matters, and certain customer orders have been subject to automatic full refunds processed by PayPal upon expiration, resulting in additional financial losses.** (*Id.*)

These consequences show that the Preliminary Injunction account freezing is not a narrowly tailored provisional remedy but instead an effective shut-down of Defendant's business operations. The severity was not justified to begin with (considering the infringement and the limited sales volume), and continued enforcement of the asset restraint is no longer equitable within the meaning of Federal Rule of Civil Procedure 60(b)(5), as the restraint no longer serves the limited purpose of preventing prospective harm and instead imposes severe and unintended consequences that far exceed what is necessary to preserve the status quo pending adjudication on the merits.

### C. Changed Circumstances Render Continued Enforcement of the Preliminary Injunction Inequitable.

In addition to the substantive deficiencies in Plaintiff's infringement theory, the Preliminary Injunction should be dissolved because materially changed circumstances now

render its continued enforcement inequitable within the meaning of Federal Rule of Civil Procedure 60(b)(5).

The Third Circuit has made clear that a district court retains continuing jurisdiction over injunctive relief and must reassess whether prospective enforcement remains equitable in light of subsequent developments. In deciding whether to dissolve or modify an injunction, courts consider, among other factors: (1) the circumstances that led to entry of the injunction; (2) the nature of the conduct sought to be restrained; (3) the length of time the injunction has been in place; (4) whether the restrained party has complied or attempted to comply in good faith; and (5) the likelihood that the challenged conduct will recur absent continued injunctive relief. *Building & Construction Trades Council of Philadelphia & Vicinity v. National Labor Relations Board*, 64 F.3d 880, 888 (3d Cir. 1995).

Each consideration supports dissolution here.

First, the Preliminary Injunction was entered on an expedited and incomplete record. At the time of the Court's ruling, Defendant's concrete evidence regarding the creation of the Florida Design and Penn Design and sale of the Products (in August 2023) were not before the Court. The Supplemental Declaration of Zhiyun Jiang now supplies that missing record. (Dkt. 49-1; Jiang Decl. ¶¶ 3, 5 – 8 & Exs. A – D.) This is not a minor factual refinement; it goes to the central premise underlying Plaintiff's alleged copyright infringement .

Second, the conduct the injunction was designed to restrain has ceased. The products identified by Plaintiff have been removed from active listings and are not available for purchase through ordinary browsing or search. (Jiang Decl. ¶¶ 12 – 13.) Where the

challenged sales are no longer occurring, the forward-looking justification for continuing extraordinary restraints is substantially diminished.

Third, Defendant has acted in good faith to comply with the Court's orders and to avoid any risk of being considered noncompliance by the Court. For instance, Defendant suspended acceptance of PayPal payments altogether. (*Id.* ¶ 20.) That step has forced a suspension of ordinary business operations.

Finally, and most importantly, the supplemental record demonstrates that the injunction's asset restraint is now operating in an inequitable manner. PayPal's independent reserve mechanisms already restrict Defendant's access to substantial portions of its funds irrespective of any court order. (*Id.* ¶¶ 16 – 18.) The Court-ordered restraint compounds those independent restrictions and has resulted in a practical freeze that prevents withdrawals, prevents refunds, and prevents ordinary commercial transactions, thereby halting operations. (*Id.* ¶¶ 15, 20 – 21.) These consequences extend far beyond preserving a litigation *status quo* and are disproportionate to any remaining interim need—particularly given the absence of ongoing sales of the products at issue.

Rule 60(b)(5) exists precisely for circumstances like these: when subsequent developments reveal that continued prospective enforcement is no longer equitable. On the materially expanded record now before the Court, the Preliminary Injunction should be dissolved.

### D. Under Third Circuit Precedent, the Severe Hardship to Defendant Now Far Outweighs Any Remaining Benefit of Maintaining the Injunction.

Third Circuit precedent requires the Court to weigh whether continued enforcement of an injunction remains equitable in light of evolving circumstances—including whether

the injunction's objectives have already been achieved and whether the continuing burdens are justified by continuing benefits. See *Building & Construction Trades Council of Philadelphia & Vicinity v. National Labor Relations Board*, 64 F.3d 880, 888 (3d Cir. 1995); *Democratic Nat'l Committee v. Republican Nat'l Committee*, 673 F.3d 192, 201 – 02 (3d Cir. 2012).

### 1. *The Purpose of the Preliminary Injunction Has Been Achieved, and There Is No Risk of Ongoing Infringement.*

On the benefit side of the ledger, there is little left for the Preliminary Injunction to accomplish. The products identified by Plaintiff have been removed from active listings, cannot be located through ordinary browsing or search, and are not available for purchase. (Jiang Decl. ¶¶ 12 – 13.) Plaintiff's asserted interest in preventing ongoing infringement is therefore largely satisfied by the marketplace reality already in place. As set forth in the Supplemental Declaration of Zhiyun Jiang (Dkt. 49-1), the products identified by Plaintiff— the Florida Sweatshirt and the Penn Crewneck Sweatshirt—have been removed from active listings on Defendant's independent storefronts. (Jiang Decl. ¶¶ 12 – 13.) As of the date of the Declaration (Dkt. 49-1), these products no longer appear in search results on either the Tapather or GiftyHubs websites and cannot be located or purchased by customers through ordinary browsing or search functions. (*Id.* ¶ 12.)

The Jiang Declaration (Dkt. 49-1) further explains that although the underlying product pages have not been deleted for internal record-keeping purposes, those pages display a "sold out" status when accessed directly and do not permit customer purchases. (*Id.* ¶ 13.) In other words, Defendant is not offering the products for sale, are not engaging in

ongoing commercial exploitation of the designs at issue, and are not continuing any conduct that could give rise to prospective harm.

### 2. *The Hardship to Defendant Was Significant and Overwhelming.*

On the hardship side, however, continued enforcement imposes severe and concrete operational harm. The Court-ordered asset restraint—combined with PayPal's independent reserve mechanisms—has effectively frozen Defendant's PayPal business account and prevented Defendant from withdrawing funds, issuing refunds, or conducting ordinary transactions necessary to operate. (*Id.* ¶¶ 15 − 18, 20 − 21.) To avoid additional funds being swept into restriction, Defendant has suspended PayPal payment acceptance altogether, which has functionally halted business operations. (*Id.* ¶ 20.) Defendant has also incurred additional losses when PayPal automatically processes refunds upon expiration of certain orders during the restricted period. (*Id.* ¶ 21.)

At this stage, the injunction's continuing burdens are not merely significant—they are disproportionate to any marginal benefit. Where the objectives of interim injunctive relief have already been achieved and continued enforcement produces escalating, unintended hardship, equity does not permit the injunction to persist. *Democratic Nat'l Committee*, 673 F.3d at 201 − 02; *Building & Construction Trades Council*, 64 F.3d at 888. The very rationale for prospective injunctive relief goes away. A preliminary injunction is intended to prevent imminent and ongoing harm, not to punish past conduct or preserve restrictions where there is no conduct left to enjoin. Where, as here, the challenged products have been removed from sale and are no longer available to customers, the risk of future infringement is speculative at best.

Accordingly, the balance of equities strongly favors dissolving the Preliminary Injunction.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dissolve the Preliminary Injunction entered on January 9, 2026.

The evidentiary record demonstrates that Defendant created, published, and sold the products at issue in August 2023—well before Plaintiff's asserted rights arose; that third-party marketplace copying, rather than Defendant's conduct, explains the proliferation of similar products; that no ongoing infringing sales exist; and that PayPal's independent reserve mechanisms already impose substantial restrictions on Defendant's funds irrespective of any court order.

Under these circumstances, continued enforcement of the Preliminary Injunction is no longer equitable and results in severe and unintended operational harm that exceeds any legitimate provisional purpose. Accordingly, Defendant respectfully requests that the Court dissolve the Preliminary Injunction in its entirety and grant such further relief as the Court deems just and proper.

Dated: January 31, 2026

*Marjorie Ouyang*

_____

Marjorie Ouyang

Attorney for Defendant