## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JIE TANG,

                Plaintiff,

      v.

SCHEDULE A DEFENDANTS,


                Defendants.

Civil Case No.: 2:25-cv-01850-CCW

## MEMORANDUM IN OPPOSITON TO DEFENDANT'S
## MOTION TO DISSOLVE PRELIMINARY INJUNCTION

### I.    PRELIMINARY STATEMENT

Procedurally, having demonstrated no "change of circumstances" as required by the Third Circuit before an existing injunction may be modified, Defendant Longyan's repetitive and still dubious efforts to vacate the injunction fails. Defendant Longyan simply offers no credible evidence as he failed to do at the January 6, 2026 preliminary injunction hearing.

Substantively, Defendant Longyan's current efforts to remove the injunction fail for the exact reason for which the Court imposed the injunction in the first place. Defendant Longyan's alleged evidence and witness lack credibility, having offered contradictory statements and submissions at different times, without any regard of its

probable falsehood.

"A court considering whether to grant a preliminary injunction may assess the credibility of the witnesses testifying before it at a preliminary injunction hearing and base its decision on its credibility determinations." *Hudson Global Res. Holdings, Inc. v. Hill* (W.D.Pa. May 25, 2007, No. 02: 07cv0132) 2007 U.S.Dist.LEXIS 38326.

Here, Defendant's sole declarant Ms. Zhiyu Jiang has been proven, time and again, lacking credibility. In addition, the "sales records" produced by Defendant Longyan are also untrustworthy, as explained by Plaintiff's China IP litigation expert Mr. Han and shown by documentary evidence, these sales records can be modified within minutes to manufacture records of past sales that never occurred.

Having neither demonstrated procedural "change of circumstances" nor presented any credible evidence, Defendant failed to meet its burden to vacate the existing injunction.  The preliminary injunction should remain.

## II.    LEGAL STANDARD

In order to prevail on a motion to modify an injunction, the movant must establish a change in circumstances that would make the original preliminary injunction inequitable:

> The purpose of the motion to modify an injunction is to demonstrate that changed circumstances make the continuation of the order inequitable. The motion does not force the trial judge to permit relitigation of his original determination of the injunction and should not serve as an avenue of untimely review of that determination.

*Favia v. Indiana Univ.* (3d Cir. 1993) 7 F.3d 332 (citing *Merrell-Nat'l Lab., Inc. v. Zenith Lab., Inc.* (3d Cir. 1978) 579 F.2d 786, 791.

The weight given to a movant's submission, however, will "vary greatly depending on the facts and circumstances of a given case." *Kos Pharms., Inc. v. Andrx Corp.* (3d Cir. 2004) 369 F.3d 700, 718-719.  A court is also tasked with assessing "the credibility of the witnesses testifying before it at a preliminary injunction hearing, and base its decision on its credibility determinations." *JMS Mfg., LLC v. Deponceau* (W.D.Pa. Feb. 14, 2025, No. 25-14 Erie) 2025 LX 282175; *Hudson Global Res. Holdings, Inc. v. Hill* (W.D.Pa. May 25, 2007, No. 02: 07cv0132) 2007 U.S.Dist.LEXIS 38326 (same); *Philadelphia Newspapers, Inc. v. Newspaper & Magazine Employees Union* (E.D.Pa. 1986) 647 F.Supp. 236.) (same); *Berger v. Weinstein*, 2008 U.S. Dist. LEXIS 56472, 2008 WL at *4 (E.D. Pa. July 24, 2008) (same); *Dongyu Zhang v. AAGGO* (W.D.Pa. Apr. 21, 2025, Civil Action No. 2:25-cv-85) 2025 LX 165951) (same); *Huishan Chen v. Adediy* (W.D.Pa. Feb. 26, 2025, Civil Action No. 2:24-cv-1516) 2025 LX 181436. (same); *Citizens Bank, N.A. v. Baker* (W.D.Pa. Oct. 5, 2018, Civil Action No. 18-826) 2018 U.S.Dist.LEXIS 172378 ("Having carefully reviewed the evidence and evaluated the credibility of the testifying witnesses in light of the parties' arguments, the Court holds that Citizens is likely to succeed on the merits…."

///

///

III.    DISCUSSIONS

A.  Defendant's Sole Declaration Lacks Credibility.
   a.  Ms. Jiang has a history of testifying without regard to the truth.

As the Court may recall, a person claiming to be Ms. Jiang testified at the January 6, 2026 preliminary injunction hearing. Back then, on Defendant's direct examination, Ms. Jiang asserted in great details about (1) how a prior design on TikTok would invalidate Plaintiff's copyrighted designs, and (2) how she determined the total number of infringing products sold.

On cross examination, however, Ms. Jiang first could not recall the name of her current employer (which is supposed by Defendant Longyan) and then refused to respond to any Plaintiff's questions altogether, representing that she simply does not speak English.

Having seen Ms. Jiang's habit of providing one-side testimony on direct examination followed by her blanket assertion of not understanding the English language at all on the cross examination, the Court discredited Ms. Jiang's January 6, 2026 testimony and issued the current injunction.

   b.  Ms. Jiang has refused to turn over the critical "prior design on TikTok."

As the Court may also recall, the January 6, 2026 preliminary injunction hearing, Ms. Jiang provided a "prior design on TikTok" that, according to Ms. Jiang, would pre-date and thus invalidate Plaintiff's copyrighted designs.

On Defendant's direct examination, Ms. Jiang asserted in great details about (1)

the creation date of that prior design on TikTok, and (2) how "identical" it was to Plaintiff's copyrighted designs.

On cross examination, however, Ms. Jiang failed to provide any details about how she discovered that prior design on TikTok. For example, the location of the webpage on which the screenshot was taken, when the screenshot was taken, by whom, at where, using what device, and how the screenshot mysteriously made its way to Ms. Jiang.

Normally, whichever party that discovers such a smoking gun would scream at the top of her lung and offer the smoking gun evidence to the Judge at the earliest opportunity possible. Right?

Not Ms. Jiang or the Defendant.  Instead, Defendant's opposition (ECF 35) filed merely days before the preliminary injunction hearing *never* mentioned this smoking gun evidence (the screenshot) once.  This begs the question how Ms. Jiang discovered this smoking gun evidence merely days before the preliminary injunction hearing but never brought it to the Court's attention until the last minute it looked that the Court was going to grant the preliminary injunction.

After the preliminary injunction hearing, Plaintiff engaged a China IP litigation expert Mr. Han to investigate Defendant's smoking gun evidence (the screenshot). Mr. Han's expert opinion was that Defendant's screenshot was forged. ECF 44-1.

Since then, Plaintiff has informally and formally requested a copy of Defendant's smoking gun evidence (the screenshot), Defendant refused to provide any copy. Liu Decl.

Exhibits A-B.

Thus, Defendant's repeated efforts to avoid producing this smoking gun evidence that, if true, would eviscerate Plaintiff's case compel the conclusion that Defendant's smoking gun evidence (the screenshot) was forged, as opinioned by the China IP litigation expert Mr. Han.

### c. Ms. Jiang's present assertions have no credibility - false in one, false in all.

"Where a factfinder concludes that a witness has testified falsely concerning one matter, the factfinder may … reject the remainder of the witness's testimony …." *Lin v. Rohm & Haas Co.* (3d Cir. 2017) 685 F.App'x 125, 133. "The 'false in one, false in all' principle is a permissible inference that a fact finder may choose to follow…." *United States v. Anderson* (3d Cir. 2019) 782 F.App'x 187.

Here, given Ms. Jiang's demonstrated history of providing barebone assertions with reckless disregard of their truth, the Court should similarly find Ms. Jiang's present assertions (ECF 52-1) untrustworthy under the "false in one, false in all' principle. *Anderson,* 782 F.App'x at 187.

### d. Ms. Jiang's declaration does not comply with statute and Rules of Evidence.

First, Ms. Jiang's unsworn declaration (ECF 52-1) should be disregarded because it was not even signed by Ms. Jiang as required by 28 U.S.C. § 1746.

Second, Ms. Jiang's made all her assertions without any required personal knowledge or authentication, as required by FRE 602.

Third, Ms. Jiang claims to have seen, yet again, "virtually identical or nearly identical" designs to Plaintiff's copyright designs—without providing any one of these allegedly identical design, as required by the Best Evidence Rule under Rule 1002.

Fourth, Ms. Jiang's proffered screenshots of sales records (Jiang Decl., Exhibits A-F) are not authenticated to the slightest degree. Ms. Jiang claims to be a business marketing manager (Jiang Decl., ¶1) but offered "backend publication and order records" (Jiang Decl., Exhibits A-F) without any apparent foundation or personal knowledge about how these backend data were generated, maintained, or retrieved for publication in this case.  In fact, Ms. Jiang does not even claim that she was an employee at Defendant company in 2023 when these "backend publication and order records" were first generated.

In sum, lacking the required foundation or authentication, Ms. Jiang's present declaration (ECF 52-1) should be given minimal evidentiary value.

### e.  China IP Litigation Expert Mr. Han's Opinion and his documentary evidence prove that Defendant's proffered sales records could have been easily forged.

At the undersigned's request, China IP Litigation Expert Mr. Han examined Exhibits A-D attached to the declaration of Ms. Zhiyun Jiang. After a thorough examination and investigation, Expert Han found that Defendant's claim that it sold sweatshirts with the Florida State Stadium design and the Penn State Stadium design in 2023 to be untrustworthy for the following reasons.  Han Decl., ¶ 10.

**First**, it is odd that Defendant "sold" more than 94% of the accused products in 2023 alone, but with next two years account for only 5% of the total sales. Defendant offered no explanation for large sales disparity.  Han Decl., ¶ 11.

On a related note, at the January 6, 2026 preliminary injunction hearing, Defendant appeared to have mistakenly believed that the statute of limitation for copyright infringement is only two years, until corrected by the undersigned that the statute of limitations is in fact three years. Han Decl., ¶ 12.

 Thus, it appears that Defendant Longyan had a strong incentive to modify its "sales records" to avoid paying more damages for the years of 2024 and 2025 by changing the order history of 90% of the relevant orders to make it appear that those orders were placed in the year of 2023. Han Decl., ¶ 13.

**Second**, from Expert Han's past negotiations with IP infringers operating in China, Expert Han knows that IP infringers routinely provide forged sales records, and that "sales records" from such e-commerce platform as Shoplazza[1] can be easily manipulated. Han Decl., ¶ 14.

As Expert Han explained, the Shoplazza company is an ecommerce technology company headquartered in Shenzhen, China. The Shoplazza company allows a user to

---

[1] As a threshold matter, Defendant concedes that its purported "[b]ackend order records [were] maintained through [a] Shoplazza [database system]."  Jiang Decl., ¶ 8.

setup and maintain an online store with "full control." *Id.*, ¶ 15.

On the Shoplazza platform specifically, a listed product has a unique (i) product id, a required (ii) product title, and an optional (iii) product image. Han Decl., ¶ 16. The required product title corresponds to the "Title," and the optional product image correspond to the thumbnail called "Media," as shown in Defendant's **Exhibits A-D**. *Id.*, ¶ 17.

The product title and product image maintained in a Shoplazza database can be easily modified. In fact, virtually all other information about a listed product can be changed, For example, a marketing manager can even change a past order's creation time, price, the buyer's name, the shipping address, and so on. Han Decl., ¶ 19. For example, the Shoplazza company even provides a step-by-step tutorial on how to edit almost any information about a *past* order. *Id.*, Exhibit C.

As a result, an item's sales records on Shoplazza can be manipulated or even completely repurposed. As shown in the step-by-step tutorial (*id.*, Exhibit C.), a marketing manager may alter a past sales records—by changing the product title, changing the product description, changing the product image, and changing the model numbers to reflect new or entirely past sales records. *Id.*, ¶ 23.

That is, a search for the product title "Penn State Stadium Crewneck Sweatshirt" against Defendant's Shoplazza database could very well return sales history of a product that had a different title in the past or even a product that had nothing to do

with a Penn State Stadium Crewneck Sweatshirt (e.g., a pair of Nike shoes), as long as that product's current title in the corresponding sales records has been altered to include the phrase "Penn State Stadium Crewneck Sweatshirt" or the like. *Id.*, ¶ 24.

To verify his opinion, on February 9, 2026, Expert Han inquired a customer service representative of the Shoplazza platform about whether he could obtain a proof of past sales, because he would like to become a seller of a particular product using the Shoplazza platform and to claim that he has prior sales history of that particular product, if a patent is asserted against the particular product he would like to sell. Han Decl., ¶ 31.

In other words, Expert Han asked a Shoplazza platform's sale representative about whether he could generate a past sales record, even though no such past sale exists. The Shoplazza platform's sale representative stated to Expert Han that "our [Shoplazza] platform can assist you to accomplish what you need." Han Decl., ¶¶ 32-33.

Expert Han has observed that IP infringers in China have taken advantage of this feature of the Shoplazza database system to avoid liability when they are sued. When negotiating settlement with IP infringers operating in China, Expert Han has been flooded with "sales records" allegedly invaliding certain IP in dispute. For example, on numerous occasions, I was provided with past "sales records" that, if true, would invalid a U.S. design patent or a U.S. copyright registration.

In most of these cases, however, these claims of prior sales were false. For example, when Expert Han asked these infringers to provide actual photos taken in the past of the accused products, I almost never received any. For another example, during some settlement negotiations, some sellers later admitted to me that no such past sales even occurred, and that their records were modified to obtain a lower settlement payment.

In sum, based on his training and experience, after a careful examination, it is Expert Han's opinion that the Exhibits A-D cited by Defendant Longyan do not prove that Defendant Longyan sold sweatshirts with the Florida State Stadium design and the Penn State Stadium design in 2023.

### B. The Preliminary Injunction Remains Necessary.

#### a. Defendant's timed involuntary compliance with this Court's order is not a ground to vacate the injunction.

Here, Defendant argues that the preliminary injunction should be vacated because it had "voluntarily" ceased selling the infringing products *after* the preliminary injunction issue and thus, Defendant misses the mark.

First, the timing of Defendant's claimed cession of its infringement is suspicious. Courts must "beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially *when abandonment seems timed* to anticipate suit, and there is a probability of resumption." *United States v. Or. State Med. Soc'y*, (1952) 343 U.S. 326, 333 (emphasis added).

Here, the Court gave Defendant numerous opportunities to cease infringement,

but Defendant refused all of them. First, during the January 6, 2026 preliminary injunction hearing, the Court explicitly asked Defendant whether it would consider, at least temporarily, stopping advertising or selling the infringing products. Defendant refused a temporary no-sale.

Second, after the January 6, 2026 hearing, the Court afforded Defendant a second opportunity to cease infringement. ECF. 42. ("[T]the Court directed the parties to meet and confer about… whether Defendants agree to stop sales of the allegedly infringing products pending discovery and the Court's ruling on preliminary injunction, or permanently, and if so, what impact that has on this case.) Defendant again refused a temporary no-sale.

Third, in addition to the Court's multiple efforts, Plaintiff also suggested making the links to the accused products from public view to avoid further infringement. Defendant again refused. ECF. 44.

Now, only after the preliminary injunction was issued, Defendant professes to have "voluntarily" stopped infringement. In truth, Defendant simply complied with an existing court order. The preliminary injunction should not be now vacated, because "an enjoined party ought not to be rewarded merely for doing what the court has directed." 11A Wright & Miller, Federal Practice and Procedure, § 2961 at 405 (1995); *see also Walling v. Harnischfeger Corp.* (7th Cir. 1957) 242 F.2d 712, 713 (refusing to dissolve permanent injunction solely on the basis of defendants' compliance; finding that "compliance is just

what the law expects").

Second, although the Third Circuit does not appear to have directly ruled on this issue, district courts within the Third Circuit have consistently held that a defendant's voluntary cession of its illegal conduct after a preliminary injunction issued is not a recognized ground for vacating the preliminary injunction. *United States v. Gregg* (D.N.J. 1998) 32 F.Supp.2d 151. ("Thus, the fact that Defendants have not engaged in obstructive behavior at MMA since the preliminary injunction was granted is not enough to convince the Court that there is no longer a need for the injunction."); *AAMCO Transmissions, Inc. v. Dunlap* (E.D.Pa. July 22, 2015, No. 11-4009) 2015 U.S.Dist.LEXIS 95234.) ("[Plaintiff] is entitled to permanent injunctive relief regardless of [Defendant's] inability or lack of desire to continue his association with [Plaintiff]. [Defendant]continued to use [Plaintiff's] name and trademark after the Agreement had expired, and only ceased his conduct upon entry of the preliminary injunction"; emphasis added.)

In sum, Defendant's timed, involuntary, and insincere choice not to sell the infringing products *after* the preliminary injunction issued is insufficient to vacate the injunction.

## C.  Defendant's business arrangement with PayPal is irrelevant.

Courts have repeatedly held that an infringing party acts at its own peril and issuing a preliminary injunction is simply requiring the infringing party to cease doing

what it had no right to do initially. *See, e.g.*, Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 612 (1st Cir. 1988) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" (quoting Helene Curtis Industries v. Church & Dwight Co., Inc., 560 F.2d 1325, 1333 (7th Cir. 1977))). As such, the Court finds that Plaintiff's hardship outweighs that of Defendants.

Further, pure financial hardship on an enjoined party is insufficient to vacate an injunction. "The balance of **hardships** favors injunctive relief where [a plaintiff] will be irreparably harmed by denial of the injunction and [a defendant] will only be harmed financially by the imposition of injunctive relief. *Picard v. Phx. Adm'rs, LLC* (M.D.Pa. Oct. 23, 2025, No. 3:24-CV-01940) 2025 LX 473211 (citing *Amoco Prod. Co. v. Vill. of Gambell, AK* (1987) 480 U.S. 531, 545.

Here, Defendant presents no genuine argument of hardship, claiming only that the PayPal company has already held some of its funds under a separate business contract unrelated to this case.

Though, with hindsight, Defendant now claims that its business contract with the PayPal company was overly strict, because the PayPal company's reserve mechanism holds some other funds of Defendant in case that Defendant misbehaves against the users of the PayPal payment system.

Defendant's present regret with the PayPal company, however, is not a recognized ground to limit an Article III court's statutory power to issue injunctions under the Copyright Act. Nor has Defendant cited any authority to the contrary.

Having collected significant income using the PayPal's payment system, Defendant's claimed business hardship with the PayPal company is not only incorrect but also irrelevant and certainly cannot limit a federal court's statutory power to issue injunction relief.

## IV.    CONCLUSION

Having neither demonstrated procedural "change of circumstances" nor presented any credible evidence but instead relying sole on the statements and submission by a witness who has already shown to be lacking credibility, Defendant failed to meet its burden to vacate the existing injunction.

Worse, as opined by Plaintiff's litigation and marketing experts, Defendant's continuing efforts to submit dubious and likely forged "prior sales" cannot justify vacating an injunction this Court duly entered after a careful review of all evidence.

Date: February 10, 2026                    Respectfully submitted,

_____/s/ Zheng "Andy" Liu_____
Zheng "Andy" Liu (CBN 279327)
1660 S Amphlett Blvd Suite 315
San Mateo, CA 94402
Email: Andy.Liu@AptumLaw.us
Phone: 650-475-6289
*Attorneys for Plaintiff*